UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

JAMES S.,[1]                                                                    3:20-cv-1650-JR

                                    Plaintiff,

                                                                        OPINION AND ORDER

             v.

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.

Russo, Magistrate Judge:

        Plaintiff brings this proceeding to obtain judicial review of the Commissioner's final

decision denying plaintiff's application for disability insurance benefits. For the reasons stated

below, the Commissioner's decision is affirmed.

        Plaintiff asserts disability beginning July 1, 2010, due to Parkinson's disease. Tr. 156, 160.[2]

After a hearing held on February 6, 2020, an Administrative Law Judge (ALJ) determined plaintiff

---

[1] In the interest of privacy, this Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Order uses the same designation for a non-governmental party's immediate family member.

[2] Prior to the hearing, plaintiff amended his alleged onset date to December 1, 2016, just 30 days before his date last insured.  Tr. 217.

was not disabled as of his date last insured. Tr. 30, 15-24.  Plaintiff contends the ALJ erred by: (1)

rejecting plaintiff's symptom testimony; and (2) rejecting a lay witness statement.

A.      Plaintiff's Testimony

Plaintiff was a medical doctor who, upon experiencing unusual neurological symptoms

took a break from his career in June 2010.  Plaintiff applied for disability benefits in March 2018

asserting disability beginning July 1, 2010, due to the onset of the neurological symptoms.  Tr.

156-158.  Plaintiff first sought treatment on September 19, 2014.  Tr. 225.  At that time, plaintiff's

neurologist assessed:

> On the basis of clinical signs and history I have made a diagnosis of Parkinson. Mr.
> Stark had already established this diagnosis himself. Additional Diagnostic
> Imaging, in particular cerebral Imaging, does not seem necessary at this time. given
> the symptoms. Because of the mild symptomatology at this time the most
> appropriate treatment would be with an MAO-B inhibitor such as Azilect. I have
> given him a prescription for 1 mg Azilect per day. We will see how this works and
> when symptoms increase may need to move to a dopaminergic treatment. No
> further appointments are scheduled at this time.

Tr. 226.

> Plaintiff did not seek further treatment until July 6, 2015, and plaintiff's neurologist noted:

> Since the first visit 3/4 year ago mild progression of Parkinson symptoms has
> occurred. Patient feels relatively well, however movements seem more restricted.
> He has noticed while bicycling increased and faster cramps in the right foot. Also,
> the right side of the face feels stiffer. Fingers move slower. Violin playing no longer
> possible. Azilect is tolerated without side effects. Subjectively has only mild effect
> on motor symptoms. Has many non-motor Parkinson's complaints: excessive
> sweating, orthostasis, urination slightly delayed. No sleep problems or nightmares.
> No relevant mood shifts. Still exercises 10 to 15 hours per week.

Tr. 227.

Plaintiff's Doctor started dopaminergic treatment and began with low dose Madopar DR

initially and after two-to-three-week intervals, depending on side-effects, increasing to a maximum

of 3 1/2 tablets of 250 mg while continuing Azilect.  Tr. 227.

Plaintiff next sought treatment on August 8, 2016, and his doctor noted improved symptoms on Madopar with no side-effects.  Tr. 228. The treatment note does reflect that plaintiff described "detailed end of dose phenomenon, regularly before the next dose of Madopar 'pulling sensation in lips, feeling of agitation, increased stiffness in face. Further increased difficulty playing piano, automatic movements do not work anymore. At night increased axial rigor." Plaintiff's doctor also determined there was no need to increase medications and that no physical therapy was needed.  Tr. 229.  The record reflects no further treatment prior to plaintiff's last date insured.

On July 26, 2018, state agency consultant Dr. Susan Moner assessed plaintiff's limitations. Tr. 55-57.  Dr. Moner opined plaintiff was limited to lifting and or carrying twenty pounds occasionally and ten pounds frequently; was able to stand and or walk about six hours in an eight-hour workday and sit about six hours in an eight-hour workday; would require additional postural and environmental limitations prohibiting climbing ladder, ropes, or scaffolds and exposure to hazards.  Tr. 55-57.  In October 2018, state agency consultant Dr. Neal Berner opined the same as Dr. Moner.  Tr.  66-68.  Neither doctor assessed any manipulative limitations.

Plaintiff's last date insured is December 31, 2016.  Just prior to the hearing, plaintiff submitted a pre-hearing memorandum amending his alleged onset date to December 1, 2016, asserting that "[a]s of his amended alleged onset date, [plaintiff] was capable of not more than sedentary work, and he was limited to less than occasional handling and fingering with his right and left hands."  Tr. 217.  It appears the ALJ was not aware of the amended onset date as the decision analyzes plaintiff's claim for the period of July 1, 2010, to December 31, 2016.  Tr. 19.

At the hearing, plaintiff testified that after leaving his practice in 2010, he moved to Switzerland and took up playing the violin again, but once the tremors started in 2014, he had to

quit.  Tr. 39.  Plaintiff stated he then switched to the piano "fairly intensively" and that worked

until about 2015 when "my fingers moving and I'm not watching them don't go where I want them

to.  They wouldn't hit the notes. I'd hear other notes besides what I thought I was supposed to be

hearing.  And that's when I realized unless I watch my right hand it doesn't do what I tell it

to."  Tr. 39.

In 2016, when asked whether he could have done a job requiring him to place a washer on

a peg, plaintiff responded that he could not.  Tr. 40.  Later in the hearing, the vocational expert

testified that a person unable to put a washer on a peg would have a handling and fingering

impairment that would preclude the identified jobs given the other limitations identified by the

ALJ.  Tr. 45 (precluding production assembler, small products assembler, and sub assembler); Tr.

46-47 (precludes furniture rental consultant and usher).

The ALJ rejected plaintiff's assertions of debilitating symptoms finding: (1) the medical

evidence available prior to the date last insured was limited to generally routine and conservative

care; (2) medical notes indicated symptoms improved or were well-managed with appropriate

treatment; (3) his activities of daily living including personal care, meal preparation, vehicle

operation, and shopping were inconsistent with the allegations. Tr. 20-21.  The ALJ also

specifically noted:

> the claimant testified that he stopped playing violin in about 2014 due to hand
> tremors and/or inability to control his hands sufficiently, he also testified that he
> kept playing piano for a couple years after that. The claimant testified that he last
> played piano in 2015. However, the medical records revealed the claimant was still
> playing piano in 2016 [Tr. 227]. It is not quite clear how long into 2016 the claimant
> was able to play piano because the claimant seldom received treatment until after
> the date last insured. Currently, the claimant testified that his primary problems
> involve cramping in his right foot. Nevertheless, the claimant testified that he
> continued to ride his bike until about 2016. He stated that he still rides a little, but
> mostly "coasts" due to his foot cramping. The medical record also indicated that
> the claimant continued to exercise regularly and go on full day hikes prior to his
> date last insured. In July 2015, the claimant indicated that he was still able to

exercise 10-15 hours per week [Tr. 227]. In August 2016, the claimant reported that one month ago he was able to still perform full day hikes [Tr. 228]. The performance of these activities is in direct contrast to his allegations, and rather, is generally consistent with the limitations described in the residual functional capacity.

Tr. 21.

The ALJ also found the state agency medical consultants' opinion persuasive as to plaintiff's functional abilities.  Tr. 22.

Plaintiff asserts the ALJ erred in rejecting his testimony.

1.    Limited, Routine, Conservative Care, and Managed Condition

As noted above, plaintiff sought limited care after his initial alleged onset date.  And although plaintiff amended his onset date to just one month prior to his date last insured, the medical record indicates plaintiff last sought treatment about four months prior to his new onset date and did not seek treatment after his alleged onset date through his date last insured.  The ALJ considered all the medical evidence and noted that the care plaintiff did receive consisted of medication that was tolerated with no side-effects and improved condition.  Although plaintiff asserts that he progressed from an MOA inhibitor to an "aggressive" medication, Madopar, the Commissioner notes the dosage was not increased to a point that side-effects required additional medications and that plaintiff did not need to engage in physical therapy.  Indeed, the August 2016 treatment note indicates "the current medications seem however overall sufficient," with "[n]o need for physical therapy at this time," and that plaintiff exercises regularly. Tr. 229.  The ALJ is entitled to draw reasonable inferences from the record, and where an ALJ makes a reasonable interpretation of the evidence, a Court may not displace that interpretation, even if other contrary interpretations are available.  Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005).  The ALJ's interpretation of the record is reasonable and provides substantial evidence in support of his finding

of limited, routine, and conservative care.  Of course, conservative care, by itself, is not a clear and convincing reason to discount subjective symptom testimony.  See Wilson v. Astrue, 2011 WL 1812501, at *6 (C.D. Cal. May 12, 2011) (Limited and conservative care is not a clear and convincing reason for discounting subjective symptoms.).  However, the ALJ found that the conservative care resulted in improved condition or at least well-managed symptoms.  Tr. 20.

Plaintiff asserts the medical record shows, because of loss in automatic function, his condition did not improve.  Tr. 228 (plaintiff describes "automatic movements do not work anymore").  However, the July 2015 treatment note indicates "mild progression," and "mild effect on motor symptoms."  Tr. 227.  The last treatment note in August 2016 indicates no side effects from Madopar, good control of the right-sided hand tremor, and an ability to do full-day hikes just one month prior.  Tr. 228.  The note also implies plaintiff still retained the ability to play the piano, although with some difficulty.  Tr. 228 (increased difficulty playing piano).  In addition, the August 2016 treatment note indicates no relevant changes in the physical exam compared to 2015 including only "mild dysdiadochokinesia R > L, rapid finger thumb opposition."  The doctor specifically noted "following the increase in Madopar [in] July 2015[,] the Parkinson's symptoms improved."  Tr. 228.  The ALJ's reading of the record is reasonable and demonstrates substantial evidence in support of a finding of improvements with treatment.  Accordingly, the ALJ provided a clear and convincing reason for rejecting plaintiff's symptom testimony regarding handling and fingering.  See Brown v. Comm'r of Soc. Sec., 2021 WL 4078015, at *17 (E.D. Cal. Sept. 8, 2021) (finding that plaintiff's pain was reported to be well-managed and improved with medication to be a clear and convincing reason based on substantial evidence in the record to reject the pain testimony).

2.    Inconsistent Statements

The ALJ noted plaintiff implied he stopped playing piano in 2015 because his fingers, without watching, "would not go where he wanted." Tr. 21 ,39. However, as indicated in the medical record, plaintiff continued playing piano at least into August 2016. Tr. 228. Although plaintiff asserts he was not disabled until December 1, 2016, plaintiff relies on the very same treatment note to support his assertion of lack of fine motor control. At any rate, the ALJ supports the apparent contradiction with substantial evidence in the record to discredit plaintiff's allegation of lack of fine motor control in his hand. This is also a clear and convincing reason to discredit plaintiff's allegations of disabling symptoms. See Burrell v. Colvin, 775 F.3d 1133, 1137–38 (9th Cir. 2014) (Inconsistencies between a claimant's testimony and the claimant's reported activities are a permissible basis to discredit a claimant's testimony.).

The ALJ did not err in rejecting plaintiff's subjective symptom testimony.

B.    Lay Witness Testimony

Plaintiff's wife submitted a witness statement of observations substantially similar to plaintiff's subjective symptom testimony indicating he lacks the fine motor skills to perform any full-time work. Tr. 215-16. Plaintiff asserts the ALJ erred by failing to address the statement.

The ALJ did not address the statement. However, the ALJ's reasoning to discount plaintiff's testimony generally applies with equal force to his wife's statement. Accordingly, the error is harmless and does not provide a reason to remand the ALJ's decision. Molina v. Astrue, 674 F.3d 1104, 1122 (9th Cir. 2012) (An ALJ's failure to comment upon lay witness testimony is harmless where the same evidence that the ALJ referred to in discrediting the claimant's testimony also discredits the lay witness's claims).

CONCLUSION

Pursuant to Sentence 4 of 42 U.S.C. § 405(g), the decision of the Commissioner is affirmed.

The Clerk is directed to enter a judgment.

DATED this 15th day of March, 2022.

 /s/ Jolie A. Russo
JOLIE A. RUSSO
United States Magistrate Judge